## JEFFERS *vs.* RADCLIFF.

The granting of letters of administration upon the estate of an individual is *prima facie* evidence of the death of the person whose estate is administered upon.

Land described as " containing ten rods, more or less, situated in D., with a house thereon, and owned in common with B. R.," was held to be sufficiently specific to pass the title in the lot on which the house was situated and land across the highway, occupied in connection with it, where the whole lot extended only to forty or fifty square rods.

One tenant in common cannot convey a part of the land holden in common, by metes and bounds, to a stranger, so as to prejudice his co-tenants.

PETITION FOR PARTITION, tried on an issue sent from this court. The petitioner claimed an undivided moiety of a certain tract of land in Derry.

The tenant pleaded that he did not hold the premises, or any part thereof, as tenant in common with the petitioner; on which issue was joined.

On the trial it appeared that the premises in question, (a plan of which follows,) containing forty or fifty square rods of land, with a house and barn thereon, were formerly owned by the defendant and one McFee.

McFee removed from the premises some time prior to 1827, and went to Cambridge, Massachusetts, leaving the defendant, whose wife is a sister of McFee, in possession.

In October, 1827, McFee, being embarrassed and intemperate, left Cambridge to go to the south, and has never returned. His wife testified that she had not heard from him since; and it did not appear that he had been heard of, ex-

cept that a person answering his description was said to have died in the western part of New-York.

He left his wife and one child at Cambridge ; and on the 10th of July, 1833, on the application of his wife, administration upon his estate was committed to David A. Gregg, by the judge of probate for this county.

On the 28th of April, 1835, said Gregg obtained license from the judge of probate, reciting that the personal estate of McFee was insufficient to pay his debts, and authorizing him to sell at public auction " the following described real estate of said deceased, to wit., the one half of a certain dwelling-house and ten rods of ground, more or less, in Derry, in said county of Rockingham, lying in common and undivided with one Benjamin Radcliff, subject to the right of dower which the widow of said deceased hath therein, as a part of said real estate cannot be sold without injury to those interested in the remainder."

On the 9th of May, 1835, said Gregg sold at public auction a moiety of the land and buildings described in the plan, to Jeffers, the demandant, and executed a deed to him of all the right, title, interest and estate which the said deceased had in and unto the one undivided half of a certain dwelling-house, &c. ; describing the premises as in the petition.

The defendant objected, 1. That there was not sufficient evidence of the death of McFee.   2. That the license and deed were both void for uncertainty.   3. That if the deed was to be regarded as a deed of the whole land, it conveyed a larger tract than the administrator was authorized to sell. 4. That if it was regarded as a conveyance of the lot where the house stood only, it was an attempt by a tenant in common to sell his share in a part of the land owned in common.

A verdict was taken for the petitioner, by consent, subject to the opinion of this court upon the foregoing case.

*Bell*, for the petitionee, contended that the exceptions taken might be resolved into two questions:

1. Whether administration was duly granted upon the estate.

2. As to the right of an administrator to sell an undivided part of the premises, instead of an undivided half of the whole estate.

That letters of administration constituted no evidence of the death of the person whose estate was administered upon, he cited 2 *Stark. Ev.* 261, *note L ;* 3 *Esp. N. P. Cas.* 63, *Thompson* vs. *Donaldson.* And that the death of a person is not to be presumed except after an absence of seven years, 1 *Phil. Ev.* 159 *and* 160 ; 6 *East* 84 ; 2 *East* 312, *Wilson* vs. *Hodges.*

He contended that there should be evidence of the death of the party *at the time of the appointment of the administrator.* At the time of the trial of the issue in the court below, which was more than seven years after McFee had left without being heard of, it was conceded that the evidence of his death was sufficient, on account of such absence.

On the second question, it was contended that the description in the deed did not convey an undivided half of the whole estate, and that a tenant in common could not convey a part merely of land owned in common. 16 *Mass. R.* 1, *Key* vs. *Goodwin ;* 12 *Ditto* 349, *Bartlett* vs. *Harlow ;* 13 *Ditto* 57, *Baldwin* vs. *Whiting ;* 1 *Hil. Ab.* 448, *and cases cited.*

*Porter,* for the petitioner, contended that the evidence of the death of McFee, as shown in the case, was sufficient to justify the verdict taken for the petitioner, and that a jury on such testimony might well have found the fact of McFee's decease. He also contended that the question of the death of McFee was settled by adjudication of the judge of probate, in the appointment of an administrator on his estate.

To the point that the description was sufficiently specific to convey the land, he cited 5 *N. H. Rep.* 113, *Haven & a.* vs. *Richardson, and* 5 *N. H. Rep.* 58, *Tenney* vs. *Beard.*

UPHAM, J.    The defence in this case is a denial of the legal right of the petitioner for partition to interfere in any manner with the estate.   The petitioner claims by virtue of a sale made by the administrator of one McFee, under a license from the judge of probate.   But it is contended that the evidence of a sale by the administrator is wholly inadmissible without prior evidence of the death of McFee.

No administration, however, is ever granted by the probate court unless the fact of the decease of the individual whose estate is to be administered upon is first shown, or appears to the satisfaction of the court.   The granting of letters of administration is, therefore, the result of a direct adjudication upon this point ; and we know of no good reason why, until the contrary is shown, this adjudication is not entitled to full faith and credit.

The English law is different.   3 *Esp. N. P.* 63, *Thompson* vs. *Donaldson ;* 1 *Phil. Ev.* 246 ; *Blackham's case,* 1 *Salk.* 290 ; 11 *State Trials* 261.   But we think the rule adopted by them cannot be sustained on good grounds, and may have arisen from collisions and jealousies betwixt the courts of common law and the ecclesiastical courts, which had an entirely distinct and independent jurisdiction.

The situation of our probate court is different.   In all cases involving questions of fact, there is a right of appeal directly to this court, and any issue arising is subject to trial by jury.   In this respect the probate court is but a subordinate branch of this court ; and where their proceedings are thus subject to revision and correction here, the court would seem bound to regard them at least as *prima facie* evidence of any facts necessarily resulting from their proceedings.   We are satisfied that such has been the ruling heretofore in this court, and have no doubt of the convenience and correctness of this practice.   We therefore hold that the granting of letters of administration on the estate of an individual is *prima facie* evidence of the death of the person whose estate is administered upon.

The other exceptions in this case go to the uncertainty of the description of the premises, in the petition for partition and in the deed conveying the land. The description is very general, being—" one half of a certain dwelling-house and ten rods of ground, more or less, in Derry, in the county of Rockingham." This is the only evidence of the locality of the land, except that it is said to be holden in common and undivided with one Benjamin Radcliff. The case finds that said Radcliff, who is the petitionee, is in possession of a tract of land, with a house thereon, answering the description in the deed, with the exception that it contains forty or fifty square rods of land, instead of ten rods. It appears also that McFee was formerly in possession of said tract.

There seems to have been no difficulty in finding the land in this case ; and we think the description sufficiently certain to make a valid conveyance of it. The fact that the number of acres is not accurately mentioned we deem immaterial. A tract of land containing ten rods, more or less, with a house thereon, might well include the lot on which the house was situated and the land separated from it by the highway, which was improved in connection with it, where the whole lot extended only to forty or fifty square rods. 4 *Mass. R.* 205, *Worthington & a.* vs. *Hylyer & a. ; 5 Ditto* 355, *Powell* vs. *Clark ;* 6 *Greenl.* 127, *Webber* vs. *Webber ;* 5 *N. H. Rep.* 113, *Haven & a.* vs. *Richardson ; Ditto* 58, *Tenney* vs. *Beard ;* 9 *Cowen* 182, *Jackson* vs. *Jones ;* 7 *Johns.* 217, *Rogers* vs. *Clark ;* 6 *Cowen* 291, *Jackson* vs. *Marsh ;* 18 *Johns.* 81, *McNaughton* vs. *Loomis.* There is not such a discrepancy here as to induce us to hold that but part of the land owned in common passed by the deed. Such a ruling would have avoided the entire deed, as the tenancy in common could not be severed in that manner. The construction of the deed sustained by us will wholly obviate this result. 17 *Mass. R.* 282, *Rising & a.* vs. *Stannard ;* 9 *Ditto* 34, *Porter* vs. *Hill ;* 11 *Ditto* 125, *Perkins & a.* vs. *Pitts ;* 12 *Ditto* 348, *Bartlett* vs. *Harlow.*

We hold the proceedings, therefore, on the sale by the administrator, to be valid; and there should be

*Partition decreed.*